UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GAVIN SCOTT PENKAL,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>MARTIN O'MALLEY,[1]<br>Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | Case No. 3:23-cv-00393-CLB<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND FOR AWARD OF BENEFITS AND GRANTING DEFENDANT'S MOTION TO REMAND FOR FURTHER PROCEEDINGS**<br><br>[ECF Nos. 13, 18] |

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Gavin Scott Penkal's ("Penkal") application for disability insurance benefits pursuant to Title II of the Social Security Act. Both parties filed a motion for remand, however, Penkal's motion seeks the Court order remand for an immediate calculation of benefits, (ECF No. 13), whereas the Commissioner's motion seeks remand for further administrative proceedings and serves as a response to Penkal's motion. (ECF Nos. 17, 18.)[2] Penkal responded to the Commisioner's motion, (ECF No. 19), and the Commissioner replied. (ECF No. 20.) Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), (ECF No. 10), the Court agrees with both parties that the matter should be remanded. However, the Court finds the matter should be remanded for additional proceedings and therefore denies Penkal's motion to remand for immediate calculation of benefits, (ECF No. 13), and grants the Commissioner's motion to remand for further administrative proceedings, (ECF No. 18).

///

---

[1]　　Martin O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]　　ECF Nos. 17 and 18 are identical documents.

## I. STANDARDS OF REVIEW

### A. Judicial Standard of Review

This court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

"However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B.   Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of their claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform their prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to

the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits the individual from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the

intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four to determine whether the individual has the RFC to perform their past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform their past work, then a finding of not disabled is made. If the individual is unable to perform any past relevant work or does not have any past relevant work, then the analysis proceeds to the fifth and final step.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the individual can do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.     CASE BACKGROUND

### A.     Procedural History

Penkal applied for disability insurance benefits ("DIB") on August 27, 2020, with an alleged disability onset date of September 18, 2003. (AR 22, 64-65, 219-25.) Penkal's application was denied initially on February 17, 2021, and upon reconsideration on August

25, 2021. (AR 64-71, 72-89.) Penkal subsequently requested an administrative hearing and on August 12, 2022, Penkal and his attorney appeared at a telephonic hearing before an ALJ. (AR 38-63.) A vocational expert ("VE") also appeared at the hearing via telephone. (*Id.*) The ALJ issued a written decision on August 30, 2022, finding that Penkal was not disabled because he could perform other work that exists in significant numbers in the national economy. (AR 22-31.) Penkal appealed, and the Appeals Council denied review. (AR 1-6.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Penkal filed a complaint for judicial review on August 13, 2023. (*See* ECF No. 1.)

**B.    ALJ's Decision**

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 22-31.) Ultimately, the ALJ disagreed that Penkal has been disabled from September 18, 2003, the alleged onset date, through the June 30, 2022, the date last insured. (AR 32.) The ALJ held that, based on Penkal's RFC, age, education, and work experience, Penkal could perform other work that exists in significant numbers in the national economy. (AR 29-32.)

In making this determination, the ALJ started at step one. Here, the ALJ found there has been a continuous 12-month period(s) during which Penkal did not engage in substantial gainful activity. (AR 24-25.) At step two, the ALJ found Penkal had the following severe impairments: history of hydrocephalus with shunt placement, epilepsy, degenerative disc disease of the lumbar spine, attention deficit hyperactivity disorder, and depression. (AR 25.) At step three, the ALJ found Penkal did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (*Id.*)

Next, the ALJ determined Penkal has the RFC to perform sedentary work as defined by 20 CFR 404.1567(a) except:

no ropes, ladder, or scaffolds; occasionally climb ramps and steps;

occasionally balance, crouch, stoop, kneel, crawl, and bend; and no exposure to dangerous machinery or moving machine parts as well as unprotected heights. The claimant requires a cane to ambulate, held in his left hand leaving his right hand free to carry small objects, and could work in jobs with moderate lighting and noise levels. He would be limited to goal-oriented jobs, with simple, routine, and repetitive instructions not done at an assembly line or at a production quota pace, a job in which the individual is limited to occasional decision making, occasional changes of workplace setting and occasional changes to workplace routine, and a job in which he has only occasional contacts with supervisors, co-workers, and customers.

(AR 27.)

The ALJ found Penkal's medically determinable impairments could reasonably be expected to cause the symptoms alleged; however, Penkal's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 27.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and factors weighing against Penkal's credibility. (AR 27-29.) The ALJ then determined that Penkal has no past relevant work. (AR 29.)

Relying on the testimony of the VE, the ALJ determined that Penkal's age, education, work experience, and RFC would allow him to perform other occupations existing in significant numbers in the national economy, such as: addresser, document preparer, table worker, and bench hand. (AR 30.) Following the hearing, Penkal's counsel submitted a letter with objections to the VE's job numbers. (AR 215-219.) The ALJ overruled the objections and held that Penkal had not been under a disability since the alleged onset date of September 18, 2003, through June 30, 2022, the date last insured, and denied Penkal's claim. (AR 30, 32.)

### III.    ISSUE

Penkal seeks judicial review of the Commissioner's final decision denying DIB under Title II of the Social Security Act. (ECF No. 13.) Penkal raises three issues for this Court's review:

(1)    Whether the ALJ erred in relying on the VE's testimony when he determined that jobs suitable for Penkal's RFC existed in significant

                numbers in the national economy;

    (2)    Whether there are occupations existing in significant numbers in the national economy available to Penkal;

    (3)    Whether the ALJ's limitation for occasional contact with supervisors is inconsistent with the VE's testimony.

(*Id.* at 2.)

## IV.    DISCUSSION

### A.    ALJ's Reliance on VE's Job Numbers

The Court will discuss the first two issues in combination, as both involve a review of the ALJ's testimony, occupations identified by the ALJ, and the job numbers provided by the ALJ. First, Penkal argues the ALJ erred in failing to address the conflict between the VE's job numbers and the numbers provided by Penkal's attorney. (AR 4-6.) Penkal argues remand is warranted because "the ALJ failed to comply with the Ninth Circuit's holdings" in *Buck v. Berryhill*, 869 F.3d 1040 (9th Cir. 2017) and *White v. Kijakazi*, 44 F.4th 828 (9th Cir. 2022). (*Id.*) Next, Penkal argues three of the four enumerated occupations are obsolete and the remaining occupation does not meet the threshold for a substantial number of jobs. (AR 7-11.)

In *Buck v. Berryhill*, the Ninth Circuit held that the "vast discrepancy" between the VE's job numbers and those tendered by the claimant, which were presumably from the same source, was "simply too striking to be ignored." 869 F.3d at 1052. The VE testified that "the occupations of bottling line attendant, bottle packer, and conveyor belt maker had national job numbers of 600,000, 8,800, and 235,000, respectively, and Washington state job numbers of 16,000, 200, and 4,400, respectively." *Id.* at 1047. The claimant's attorneys, allegedly using the same software program as the VE, provided a post-hearing submission which alleged that there were "only 231 positions nationally as a bottling line attendant, with six in Washington; 2,039 positions nationally as a bottle packer, with 51 in Washington; and 26 positions nationally as a conveyor belt maker, with none in Washington." *Id.* The ALJ did not address the claimant's post-hearing submission in his

decision denying disability benefits. *Id.* The Ninth Circuit reversed, concluding that in failing to address that discrepancy, the ALJ violated the general duty to develop the record and directed that the inconsistency in the record be addressed by the ALJ on remand. *Id.*

Subsequently, in *Kilpatrick v. Kijakazi,* the Ninth Circuit explained that when a claimant provides job numbers that conflict with those of a vocational expert, the ALJ is required to consider the conflicting job numbers only if the job numbers supplied by claimant constitute "significant probative evidence." 35 F.4th 1187, 1193-94 (9th Cir. 2022) (holding that the "significant probative evidence" standard applies when claimant introduces job numbers that conflict with those of the VE). In *Kilpatrick*, the Ninth Circuit found the claimant failed to satisfy this standard because her counsel's estimated job numbers lacked a sufficient foundation. *Id.* at 1194. Specifically, the estimated job numbers were not significant probative evidence because the claimant's attorney did not replicate the VE's same methodology and the attorney "had no identified expertise in calculating job figures in the national economy." *Id.* (citing *Tobeler v. Colvin*, 749 F.3d 830, 834 (9th Cir. 2014) (noting that, under *Vincent v. Heckler*, 739 F.2d 1393 (9th Cir. 1984), an ALJ need not discuss evidence that a lay witness is "not competent" to provide). The Ninth Circuit also clarified that the ALJ's duty to resolve conflicts as to the occupational evidence provided by the VE as to job number estimates is not required where the ALJ has confirmed that the estimates do not conflict with the DOT. *Id.* at 1195.

In *White v. Kijakazi*, the Ninth Circuit applied its holding in *Kilpatrick* and held that "remand is appropriate to allow the ALJ to address the evidence and to resolve the inconsistency between the job-number estimates provided by [the claimant] and by the VE." 44 F.4th at 836. The Ninth Circuit explicitly found that the evidence submitted "created an inconsistency in the record that the agency had an obligation under *Buck* to address and resolve." *Id.* at 837.

In sum, to determine whether the ALJ had a duty to address a conflict in job-number evidence, and failed to discharge that duty, the Court must consider on a case-by-case basis whether new evidence submitted by a claimant is "meritless or immaterial" or has

9

1  "significant probative" value. *Wischmann v. Kijakazi*, 68 F.4th 498, 506 (9th Cir. 2023) (citing *Kilpatrick*, 35 F.4th at 1193). If the new evidence is significant and probative, the Court must remand to the ALJ to address the inconsistency in the record evidence. *Id.* (citing *White*, 44 F.4th at 837; *Buck*, 869 F.3d at 1052). Otherwise, if the claimant's new evidence is either not probative or not significant, the Court must uphold the ALJ's determination. *Id.* (citing *Kilpatrick*, 35 F.4th at 1195).

Turning to the facts of the instance case, the VE testified that the jobs of addresser, document preparer, table worker, and bench hand. (AR 29-30, 56, 61.) The VE testified that the methodology used was SkillTRAN Job Browser Pro software 9.7.4.1. (AR 57.) During the questioning of the VE at the hearing, the VE confirmed that their testimony was consistent with the DOT. (*Id.*) Penkal's objections to the VE's job numbers began with Penkal's attorney pulling job numbers for three jobs from Job Browser Pro, although the software version number is not specified. (AR 215-24.) Penkal's attorney provides a brief description of why Job Browser Pro does not support the job numbers provided by the VE and attaches reports generated by the software for addresser, table worker, and bench hand. (*Id.*)

The Commissioner admits that except for bench hand, the occupations provided by the VE are "problematic." (ECF No. 18 at 7.) The Commissioner first acknowledges that inclusion of the addresser and document preparer occupations are frequently considered obsolete by Ninth Circuit courts. (*Id.* (citing *Luchsinger v. Kijakazi*, No. 22-55599, 2023 WL 3735568, at *1 (9th Cir. May 31, 2023) and *Valdez v. Comm'r of Soc. Sec.*, No. 1:22-CV-00477-EPG, 2023 WL 2636377, at *3 (E.D. Cal. Mar 24, 2023)).) As to document preparer, the Commissioner also acknowledges that the job requires level 3 reasoning which conflicts with his RFC. (*Id.* (citations omitted).) Next, the Commissioner acknowledges the table worker occupation "appears to conflict with the RFC." (*Id.*)

However, the Commissioner argues the occupations provided by the VE were "representative" occupations and therefore do not constitute an exhaustive list of occupations which fit Penkal's RFC. (*Id.* at 6-8.) As such, the Commissioner argues

remand for further administrative proceedings are required to allow the ALJ to "determine the full scope of occupations available." (*Id.* at 8.)

A helpful comparison to the instant case is the Ninth Circuit's decision in *Lloyd v. Kijakazi*. No. 22-35684, 2023 WL 4044415, at *1 (9th Cir. June 16, 2023). In *Lloyd*, the Ninth Circuit found the ALJ also was not required to consider the claimant's rebuttal evidence because the claimant's attorney "neither replicated the VE's methodology nor identified any expertise in calculating job figures in the national economy." *Id.* at *1. The VE began by pulling job numbers from Job Browser Pro, as the claimant's attorney did. *Id.* However, the VE's testimony made clear that three jobs he named were illustrative, and not exhaustive, of the occupations the claimant could perform given her residual functional capacity. *Id.* Ultimately, the Ninth Circuit held that "[b]ecause [the claimant's] attorney only compiled job numbers for the three enumerated jobs and did not 'research each particular job that would fit the hypothetical,' [the claimant's] rebuttal evidence is not significant and probative." *Id.* (quoting *Kilpatrick*, 35 F.4th at 1194). As the court may direct the award of benefits where "no useful purpose would be served by further administrative proceedings, … or where the record has been thoroughly developed," the question becomes whether the VE's testimony was that the jobs named were "illustrative, and not exhaustive," of the occupations Penkal could perform given his RFC. *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988) (citation omitted); *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (amended Feb. 5, 2016) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.")

In this case, after the VE identified the jobs of addresser, document preparer, and table worker, the ALJ asked the VE: "is there another job you could add beyond the three that you gave?" To which the VE replied, "[y]es, I could add bench hand." Unlike the facts in *Lloyd*, this exchange does not make entirely clear whether the VE responded with only one additional job because the ALJ only asked for "another job" in the singular, as opposed to "other jobs" in the plural, or whether the VE responded with the only remaining available

job. Based on the uncertainty as to whether the VE listed all possible occupations Penkal could perform based on his RFC, the Court cannot conclude that further administrative proceedings would serve no useful purpose. *Varney*, 859 F.2d at 1399; *Dominguez*, 808 F.3d at 407. Thus, the Court finds that this matter should be remanded to the agency for further administrative proceedings to determine whether the four enumerated occupations constitute an exhaustive or illustrative list.

### B.  Conflict Between RFC and VE's Testimony

Finally, Penkal argues that the ALJ's RFC limitation for occasional contact with supervisors is inconsistent with the VE's testimony that an individual limited to interacting with their supervisor occasionally could not complete the training period to perform any of the jobs given. (ECF No. 13 at 11-12.) In response, the Commissioner argues Penkal's RFC "appears to lack related medical support" for the limitation to occasional contact with supervisors. (ECF No. 17 at 4-6.)[3] The Commissioner argues remand is necessary for the ALJ to reevaluate Penkal's RFC "and/or to further discuss the medical basis for the assessed social limitations." (*Id.* at 6.)

An ALJ posing a hypothetical question to a vocational expert "must include 'all of the claimant's functional limitations, both physical and mental' supported by the record."

---

[3]   The Commissioner makes multiple arguments based on information in the record that was neither discussed nor referenced in the ALJ's decision. (*See e.g.* ECF No. 18 at 5 (citing reports in the record which were not mentioned in the ALJ's decision).) "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (emphasis original) (citations omitted). Additionally, the Commissioner argues the matter should be remanded for additional proceedings because the ALJ should conduct a drug and alcohol materiality analysis based on Penkal's admitted drug use. (ECF No. 18 at 9-10; ECF No. 20 at 3.) However, a drug and alcohol materiality analysis is not necessary unless the claimant has been found disabled under the five-step inquiry. *Bustamante v. Massanari*, 262 F.3d 949, 956 (9th Cir. 2001) ("Only if the ALJ determines that [the claimant] is disabled under the five-step inquiry, should the ALJ consider whether 'alcoholism is a contributing factor material to' that determination, pursuant to 20 C.F.R. §§ 404.1535 and 416.935.") The Court will only review arguments made by the Commissioner which are based on reasoning, findings, or analysis offered in the ALJ's decision.

*Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995)). An ALJ "need not include all claimed impairments in his hypotheticals, [but] he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997). These restrictions on hypothetical questions apply to the hypothetical on which the ALJ bases their findings. *See Lewis v. Apfel*, 236 F.3d 503, 517–18 (9th Cir. 2001) (finding improper the ALJ's reliance on the VE's response to a hypothetical question that did not include all of claimant's impairments, even though another hypothetical question the ALJ asked had accounted for all of claimant's impairments). By responding to hypothetical questions, the vocational expert testifies as to: (1) what jobs the claimant would be able to perform; and (2) the availability of such jobs in the national economy. *See Kilpatrick*, 35 F.4th at 1192.

"If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). "To qualify as substantial evidence, the testimony of a vocational expert must be reliable in light of the medical evidence." *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985); *Kilpatrick*, 35 F.4th at 1192-93 ("[A] VE's expert opinion may count as substantial evidence even when unaccompanied by supporting data) (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019) (rejecting argument that VE testimony could never qualify as substantial evidence when the VE refused to produce her underlying data), and *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.")). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (internal quotes and citation omitted).

A review of the record shows there is a conflict between the VE's testimony and

13

Penkal's RFC. Penkal's RFC states that he may only have limited to occasional contact with supervisors. (AR 27.) However, the VE confirmed that someone with Penkal's RFC would not be able to complete the training period for any of the enumerated jobs because it would exceed two and a half hours per day, or one third of the workday. (AR 62.) Penkal argues that the Court should award benefits under the credit-as-true rule because the ALJ failed to resolve the conflict between the RFC and the VE's testimony. (ECF No. 13 at 12.)

The credit-as-true rule mandates that in order "for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted). However, even if all conditions are met, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018) (as amended).

Here, as with the previous two issues raised by Penkal, the Court finds remand for additional proceedings is necessary. Penkal's argument fails on the first prong of the credit-as-true analysis because it is unclear whether the four enumerated occupations constitute an exhaustive or illustrative list. If there are additional occupations Penkal could perform, then the VE's testimony as to the four jobs does not automatically prohibit Penkal from performing any work. Thus, remand for award of benefits on this issue is not available under the credit-as-true because the record is not fully developed. *Garrison*, 759 at 1020.

In addition to the issues on remand outlined above, the ALJ must reconcile the conflict between the VE's testimony as to whether Penkal's RFC prevents him from performing all occupations because he could not complete the training period due to a limitation to only occasional contact with supervisors.

///
///

14

### V. CONCLUSION

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds the ALJ's decision was not supported by substantial evidence and further administrative proceedings would be useful.

Accordingly, **IT IS THEREFORE ORDERED** that Penkal's motion to remand for the immediate award of benefits, (ECF No. 13), is **DENIED**, and the Commissioner's motion to remand for further administrative proceedings, (ECF No. 18), is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and **CLOSE THIS CASE**.

**DATED**: ___April 30, 2024___

_____
**UNITED STATES MAGISTRATE JUDGE**